UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONTINENTAL 332 FUND, LLC, et al., | |
| Plaintiffs, | |
| v. | Case No. 19-cv-5060 |
| ALBERTELLI CONSTRUCTION, INC., GEORGE ALBERTELLI, WESTCORE CONSTRUCTION, LLC, et al., | Principal case pending in the United States District Court for the Middle District of Florida, Case No. 2:17-cv-00041FtM-38MRM |
| Defendants. | |

### NON-PARTY, BUILTECH CONSTRUCTION, INC.'S, MOTION TO QUASH SUBPOENA PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(d)(3)

Non-Party, Builtech Construction, Inc. ("Builtech"), by Carlson Dash, LLC, its attorneys, moves this Court for entry of an order quashing the subpoena (the "Subpoena") served on it by Defendant Westcore Construction, LLC ("Westcore") pursuant to FED. R. CIV. P. 45(d)(3)(A)(iv) and 45(d)(3)(B)(i). Compliance with the demands of the Subpoena will cause undue burden on Builtech and the Subpoena seeks the disclosure of privileged and confidential commercial information. As a result, it should be quashed. Builtech also requests an award of its attorneys' fees and expenses incurred related to the Subpoena and the instant motion pursuant to Fed. R. Civ. P. 45(d)(1).[1] In support of the relief requested, Builtech states as follows:

### BACKGROUND

*The Underlying, Principal Lawsuit*

Westcore issued the Subpoena in connection with an action captioned *Continental 332 Fund, LLC et al. v. Albertelli Construction, Inc. et al.*, Case No. 2:17-cv-00041FtM-38MRM,

---

[1] Pursuant to Rule 45(d)(1), Builtech is entitled to make this request: *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

pending in the United States District Court for the Middle District of Florida (the "Lawsuit"). In the Lawsuit, the Plaintiffs (there are eight) seek money damages against the Defendants (there are over a dozen – including one third-party Defendant) based on multiple theories of recovery. Plaintiffs allege a complex web of fraud and fraudulent activity allegedly perpetrated against them that spans multiple complex commercial construction projects across several states, involves several entities, and alleges millions of dollars of harm. The approximately two-year-old lawsuit involves complex pleadings, multiple defendants, and, Builtech can only guess, an extremely deep well of information – in multiple formats – subject to discovery. Frankly, neither Builtech nor its counsel have expended the substantial resources required to know and understand every issue in the Lawsuit. And, they should not have to because Builtech is a non-party and has no apparent interest whatsoever in the Lawsuit's outcome.

***Builtech***

Builtech [Construction, Inc.] is a separate entity from Builtech Services, LLC ("Builtech Services"). The former has not done any substantial business for several years, after some of its assets were acquired by the latter. There is some, but not complete, overlap in ownership and management of the two companies. Builtech [Construction, Inc.] never entered into any contract with, and was never retained to perform services for, any Plaintiff or any entity related to any Plaintiff.

Builtech Services is in the business of being a general contractor for the construction of commercial projects that vary in size, complexity, and location across the United States. At any given time, Builtech Services may have a range of twenty to twenty-five active projects. Each project must be staffed with several employees. Every project requires boots on the ground and office, clerical, and administrative staff. Builtech Services was retained by Continental Properties for the construction of a multiunit residential development in West Dundee, Illinois in or about June of 2017. Builtech Services and its employees had contact with Brian Nick, apparently a Continental employee, as defined by the Subpoena. Such contact was limited in scope to the project

for which it was retained.  Builtech Services had no oversight, control, or influence over any of the Defendants before, during, or after the project.  The Declaration of Vito Catalfio in Support of this Motion is attached as **Exhibit 1**.

*Westcore's Subpoena*

### A.  THE TIME AND PLACE COMPLIANCE DEMANDED ARE OUTSIDE THE BOUNDARIES OF RULE 45

On June 18, 2019, Westcore, by its attorney, John D. Webb, issued a Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of Premises in a Civil Action to Builtech.  A copy of the Subpoena is attached as **Exhibit 2**.  The Subpoena was served on Builtech's registered agent on June 28, 2019.  The Subpoena demanded compliance by July 18, 2019, only twenty days after the date of service.[2]  While the face of the Subpoena commands compliance at KLDiscovery, in Chicago, Illinois, Exhibit A to the Subpoena defines the "Place of Production" to be the offices of John D. Webb, Esq., 34 Cordova Street, St. Augustine, Florida 32084.  *See* Exh. 2 at Exh. A, III.  While the face of the Subpoena appears to comply with Fed. R. Civ. P. 45(c)(2)(A), its Exhibit A purports to require compliance outside of the 100-mile limit of where the subpoena respondent resides, is employed, or transacts business.

### B.  THE SUBPOENA'S SCOPE IS OVERBROAD AND UNDULY BURDENSOME

The Definitions included in the Subpoena's Exhibit A are so broad as to be almost meaningless, and, in one very material respect, conflict with the face of the Subpoena.  The Subpoena itself is directed to "Builtech *Construction, Inc.*" Definition 2 from Exhibit A of the Subpoena defines "you", "your", and "Builtech" as "Builtech *Services, LLC* and your agents, directors, or other persons acting on your behalf during the Relevant Period."  *See* Exh. 2 at Ex. A, I, 2. As noted above, Builtech Services, LLC and Builtech Construction, Inc. are two distinct entities.  The Subpoena does not even consistently indicate from which entity it seeks information

---

[2]  Westcore's counsel agreed to a fourteen-day extension to respond, or until August 1, 2019.  However, if the scope of the Subpoena is read broadly, compliance would take months.

and was only directed to and served on Builtech Construction, Inc. The Subpoena demands a response to twenty-three (23) overly broad, and sometimes impossible to understand document requests, and covers a "Relevant Period" of over five and a half years.

While Builtech has not done business with any Plaintiff or any affiliate of any Plaintiff, if documents in the possession, custody or control of Builtech Services are deemed to be in the possession, custody or control of Builtech, compliance would impose substantial undue burdens as outlined below. In its Instructions, the Subpoena requests "all documents which you have or which are reasonably available to you, including documents in the possession, custody or control of your attorneys', investigators, agents, associates, partners, or representatives." *See* Exh. 2 at Ex. A, II. Moreover, the Subpoena imposes a substantial burden on Builtech even where documents *are not* in its possession: "If you[r] (sic) response to any requests (sic) is that the documents are not possessed or reasonably available to you, please describe in detail the efforts you made to locate or obtain the document together with its likely source." *Id.*

### C. BUILTECH'S ATTEMPTS TO MEET AND CONFER

On July 16, 2019, counsel for Builtech spoke with counsel for Westcore on the phone to (i) acknowledge receipt of the Subpoena and (ii) attempt to facilitate Builtech's compliance after it had been pared down substantially. Counsel for Builtech emailed counsel for Westcore to confirm the date and substance of the conversation. Thereafter, as initially discussed and also indicated via email, counsel for Builtech attempted to schedule a follow-up discussion regarding the Subpoena on two occasions, to no avail. Counsel for Westcore has not contacted counsel for Builtech since July 16, 2019. A copy of the emails evidencing the foregoing is attached as **Exhibit 3**. No explanation has been offered as to why the information sought in the Subpoena cannot reasonably be obtained from the Plaintiff or, perhaps, named Defendants in the Lawsuit.

4

## ARGUMENT

### I.   WESTCORE CANNOT MEET THE SEVENTH CIRCUIT'S STANDARD FOR NON-PARTY SUBPOENAS

Westcore cannot meet the standard applied by the Seventh Circuit in determining whether to enforce a non-party subpoena. In analyzing whether to quash a non-party subpoena under Rule 45(d), a court "must engage in a balancing process, balancing the burden of compliance against the benefits of the requested production." *Patterson v. Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at *1 (N.D. Ill. Jan. 6, 2005) (citing *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)).

The Seventh Circuit, and the district courts therein, have applied the balancing test to require a substantial showing in order to enforce a subpoena against a non-party that, like Builtech, is not a percipient fact witness and is otherwise disinterested in the underlying lawsuit. The fact that requested information may be, or is merely, relevant to an underlying lawsuit is not enough.

> Non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection. That protection encompasses weighing the need for the material subpoenaed against the burdens involved in its production. Burden in this context means more than mere administrative hardship. It encompasses the interests that enforced production would compromise or injure.

*Patterson*, 2005 U.S. Dist. LEXIS 1331, at *5. And, if the same or similar information may be obtained elsewhere, *i.e.,* perhaps parties to the underlying litigation, a motion to quash may be granted. *See Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1993 U.S. Dist. LEXIS 15346, at *14 (where a subpoenaed third-party witness "would not seem to be able to add anything to the information" which can be obtained from another source, quashing is appropriate).

### II.   THE SUBPOENA SHOULD BE QUASHED TO AVOID IMPOSING AN UNDUE BURDEN ON NON-PARTY BUILTECH

Fed. R. Civ. P. 45(d)(3)(A)(iv) provides that a court "must quash or modify a subpoena that: … subjects a person to an undue burden." Rule 45(d)(3)(B) allows a court to quash or modify a subpoena that requires the disclosure of "trade secret, or other confidential research,

development, or commercial information." Courts in this district routinely quash subpoenas issued to non-parties where responding to the subpoenas would subject the non-party to an undue burden, even where the non-party may have some relevant discovery. *See, e.g., Northwestern Mem. Hosp.*, 362 F.3d at 927; *Patterson*, at *14.

Even if Westcore can articulate some reasonable basis for the scope and breadth of the Subpoena (and Builtech is not conceding that it can – Westcore has not articulated how and why the information it seeks is relevant to the Lawsuit), Westcore still must establish that compliance will not impose an undue burden on Builtech. It cannot do so. The time and expense imposed on Builtech to attempt to fully comply with the Subpoena would be astronomical. It goes far beyond "administrative hardship." *See Patterson* at, *5. The requests in the Subpoena seek literally every piece of paper, electronically stored piece of information, text-messages, emails, drafts, contracts, phone records, cancelled checks, the list goes on, for a multi-million-dollar project. Moreover, the requests seek information specific to certain individuals. If it attempted to comply, Builtech would be required to locate, organize, assemble, review for confidential and privileged information, and then transmit, tens of thousands of pages of information. Such an endeavor would require hundreds of employee hours, thousands of dollars of lost time, and significant legal fees to review the documents for compliance and any potential privilege claims. Rule 45 and the cases interpreting it do not allow Westcore to impose such a burden with the stroke of a pen.

Additionally, the Subpoena requests non-public information related to pricing given by Builtech to a customer [Plaintiffs]. *See* Exh. 1 at Ex. A, IV, 2 (seeking all bids, proposals or other documents reflecting pricing form you to [Plaintiffs]…). Builtech should not be required to broadcast to Westcore, and as a result anyone else that has access to the Lawsuit if such information becomes part of the record, confidential information related to pricing given to a customer. Rule 45(d)(3)(B) specifically protects Builtech against such disclosure, as federal courts have consistently applied this rule to protect non-parties. *See U.S. v. Serta Assoc., Inc.*, 29 F.R.D. 136 (N.D. Ill. 1961) (motion to quash granted because subpoena to non-party was not shown to be

relevant and court did not want to force non-party to divulge confidential information); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1319-21 (Fed. Cir. 1990) (reversing district court denial of motion to quash filed by non-party where plaintiff attempted to obtain non-party's confidential business information – sales volumes, customer lists – in a patent infringement action).

Here, there has been no showing that the information sought in the Subpoena is relevant. Further, there has been no effort by Westcore to narrowly tailor the Subpoena to achieve its ends despite an express request by Builtech for Westcore to do so. And, even so, there has been no showing that the burden imposed on Builtech is justified. The Subpoena is a classic fishing expedition that violates Rule 45(d)(1). Builtech will not bite. The Subpoena should be quashed.

## CONCLUSION

For all the reasons set forth above, Builtech requests that this Court enter an Order quashing the Subpoena in its entirety. Further, and pursuant to Fed. R. Civ. P. 45(d)(1), Builtech also requests that this Court award its reasonable attorneys' fees and expenses incurred in connection with this Motion, and award Builtech any other relief deemed proper.

<div style="margin-left: 40%;">

Respectfully submitted:

BUILTECH CONSTRUCTION, INC.

By: /s/ *Steven D. Mroczkowski*
One of its Attorneys

</div>

CARLSON DASH, LLC
James M. Dash ARDC #6200504
Steven D. Mroczkowski ARDC #6302590
216 S. Jefferson St., Suite 504
Chicago, Illinois 60661
Telephone: 312-382-1600
Email: jdash@carlsondash.com
Email: smroczkowski@carlsondash.com